IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | | |
|---|---|---|---|
| FINTIV, INC., | | § | |
| | | § | |
| | Plaintiff, | § | C.A. NO. 6:18-cv-372-ADA |
| v. | | § | |
| | | § | JURY TRIAL DEMANDED |
| APPLE INC., | | § | |
| | | § | |
| | Defendant. | § | |

**<u>APPLE INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

Pursuant to 28 U.S.C. § 1404(a), Defendant Apple Inc. ("Apple") moves to transfer this case to the Northern District of California ("NDCA") because NDCA is a clearly more convenient forum than the Western District of Texas ("WDTX"). Should the Court determine that NDCA is not clearly more convenient than this District, Apple alternatively moves to transfer this case to the Austin Division of this District.

## INTRODUCTION

In this patent infringement lawsuit, Fintiv accuses Apple, a California company, of infringing a single patent by making, using, selling, importing and/or offering for sale the Apple Wallet application on iPhone and Apple Watch. The research, design, development, implementation, and product marketing of Apple Wallet are all centered in NDCA. Accordingly, Apple's potential witnesses and documents are in NDCA. Potential nonparty witnesses are also in NDCA. Apple is not aware of any potential Apple or nonparty witnesses in this District.

Although Fintiv is headquartered in Austin, it appears to be a virtual company focusing on patent enforcement with only a handful of employees around the United States. Fintiv does not appear to have been involved in the development of the patent-in-suit and admitted it does not possess any conception and reduction to practice documents. Therefore, Fintiv is unlikely to have many relevant witnesses or documents in this District or anywhere.

Because the interests of justice and the convenience of the parties and likely witnesses strongly favor transfer, Apple respectfully requests that this action be transferred to NDCA, or in the alternative, to the Austin Division of WDTX.

## BACKGROUND

### I.       This Lawsuit and the Asserted Patent

Fintiv alleges that the Apple Wallet application (the "Accused Technology") on the iPhone (including the iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, 7 Plus, 8, 8 Plus, X, XR, XS, and XS Max) and Apple Watch (including Series 1 through 4) (collectively, the "Accused Products") infringes U.S. Patent No. 8,843,125 (the "'125 Patent"). Pl.'s 1st Am. Compl. for Patent Infringement ¶¶ 1-3, 16 (ECF No. 28) ("FAC"). The '125 Patent is titled "System and Method for Managing Mobile

1

Wallet and Its Related Credentials." According to Fintiv, the '125 Patent relates to "a mobile wallet application and mobile wallet management system to store contactless cards in a secure environment." *Id. ¶* 12.

## II. Apple's Witnesses and Documents Are in NDCA

Apple is a California corporation headquartered in Cupertino, California since 1976. Decl. of Michael Jaynes ¶ 3 (Ex. A) ("Jaynes Decl."). Although Apple sells its products throughout the United States, the research, design, development, marketing, and finance operations for the Accused Technology take place in NDCA. *Id.* ¶¶ 5, 10-15, 17, 19-21. Indeed, the Apple employees who designed and developed the Accused Technology, and who will be able to explain to jury how that technology operates, are located in or around Cupertino. *Id.* ¶¶ 12-15.

Because Fintiv's infringement allegations are based largely on the Apple Wallet software, engineers familiar with the Apple Wallet source code and servers will be particularly important witnesses. *See, e.g.*, Decl. of Claudia Wilson Frost (Ex. B-17) (Preliminary Infringement Contentions at 18) ("Frost Decl.") ("On information and belief, the Accused Apple Devices enable retrieving a widget (e.g., related user interface software) and a wallet management applet (WMA) (e.g., a software component related to management of credit card applets) corresponding to the contactless card applet (e.g., a software component related to a credit card within Apple Wallet)."); *id.* at 89 ("On information and belief, the Accused Apple Devices include a WMS (e.g., Apple Pay server wallet management infrastructure) that is hosted on the TSM system (e.g., Apple Pay servers)."). These individuals are located in NDCA.

 Glen Steele is an Engineering Manager at Apple and leads the Wallet Engineering team for iOS, the operating system for the accused iPhones. Jaynes Decl. ¶ 12. Mr. Steele and his team are responsible for developing, maintaining, and updating the device-side iOS source code for Apple Wallet. *Id*. Mr. Steele and the members of his team with knowledge about the design and development of the Apple Wallet iOS source code are all located in or around Cupertino. *Id*.

Greg Novick is an Engineering Manager at Apple and leads the Apple Watch Software Engineering team for watchOS, the operating system for the accused Apple Watches. *Id.* ¶ 13.

Mr. Novick and his team are responsible for developing, maintaining, and updating the device-side watchOS source code for Apple Wallet.  *Id*.  Mr. Novick and the members of his team with knowledge about the design and development of the Apple Wallet source code for watchOS are all located in or around Cupertino.  *Id*.

Chris Sharp is the Director of Engineering in the Apple Pay Server Engineering group.  *Id*. ¶ 15.  Mr. Sharp has been involved in the design and development of Apple Wallet, and its predecessor product called Apple Passbook, since its inception around 2011, and he wrote much of the source code for the original version of the server-side software utilized by the Apple Wallet application.  *Id*.  Mr. Sharp's team is responsible for developing, updating, and maintaining the server-side source code for Apple Wallet.  *Id*.  The servers are not located in WDTX.  *Id*. With four exceptions, Mr. Sharp and his team are located in or around Cupertino.  *Id*.  The remaining four individuals are located outside the United States.  *Id*.

Apple witnesses with knowledge relevant to non-technical issues in this case are also located in NDCA.  David Brudnicki leads the Apple Pay Product Architecture team at Apple.  *Id*. ¶ 14.  Mr. Brudnicki's team interfaces with both internal Apple personnel (*e.g.*, the Apple Wallet engineering teams) and external business partners (*e.g.*, financial institutions) to ensure that Apple Wallet satisfies business, technical, and regulatory requirements.  *Id*.  Mr. Brudnicki and all the members of his team are located in or around Cupertino.  *Id*.

Baris Cetinok is the Senior Director of Product Marketing at Apple with product marketing responsibilities for Apple Wallet and Apple Pay.  *Id*.  ¶ 17.  Mr. Cetinok and his team members with knowledge of Apple Wallet product marketing are located in or around Cupertino.  *Id*.

Michael Jaynes, Senior Finance Manager at Apple, works in Sunnyvale, California and is knowledgeable about the sales and financial information concerning iPhones and Apple Watches. *Id*. ¶ 21.  Apple's team responsible for and knowledgeable about Apple's licensing practices is also located in NDCA, and none of its members are in Texas.  *Id*. ¶ 20.

In addition, none of these individuals are aware of anyone in Texas who is responsible for

designing, developing, or marketing Apple Wallet.[1]  *Id.* ¶¶ 12-15, 17, 22.

### III.     Fintiv Is Likely to Have Few Sources of Evidence

While public details are scarce, Fintiv has the earmarks of a newly-rebranded virtual company with limited business operations beyond litigation.  Fintiv claims to be a "new company" that has "a mobile commerce platform that brings together payments, loyalty programs and marketing campaigns in one place."  Frost Decl. (Ex. B-12) (Fintiv's webpage); *id.* (Ex. B-13) (Fintiv's LinkedIn Profile).  In reality, Fintiv is the new name of a troubled startup previously known as Mozido, Inc. that is now "actively working to enforce its broad patent portfolio."  *Id.* (Ex. B-15) (Entity Details for Fintiv, Inc.); *id.* (Ex. B-11) (*Forbes* article).  Mozido, "now doing business as Fintiv," was a "financial technology start-up company," *id.* (Ex. B-14, ¶ 4) (Indictment, *United States v. Liberty*), that raised over $55 million in funding between 2010 and 2017.  *See id.* (B-16, ¶¶ 1-2) (Compl., *SEC v. Liberty*); *id.* (Ex. B-11) (*Forbes* article).  As alleged by the government in lawsuits against certain Mozido founders, significant portions of those funds, however, were diverted for personal use by one founder and his friends and family.  *See id.* (Ex. B-14, ¶ 12) (Indictment, *United States v. Liberty*); *id.* (Ex. B-16, ¶ 3) (Compl., *SEC v. Liberty*).

Fintiv alleges its principal place of business is at 801 Barton Springs, Austin, Texas, which is a co-working space owned by WeWork.  FAC ¶ 5; Frost Decl. (Ex. B-1) (WeWork webpage—

---

[1] Apple has five retail stores and three nonretail offices in WDTX, but none of the employees at those facilities have knowledge relevant to this litigation and all of the relevant documents located to date are in NDCA.  *Id.* ¶¶ 24-26.  None of the employees in WDTX has any responsibility for the design, development, implementation, or product marketing of Apple Wallet or are likely to have unique documents or information relevant to this case.  *Id.*  Although Apple employs a data scientist in Austin who is responsible for fraud detection in connection with the Apple Pay card provisioning process, *id.* ¶ 16, the '125 Patent neither claims nor discloses any fraud detection algorithms.  *See generally* '125 Pat.  Fraud detection is a separate aspect of card provisioning that is not at issue in this case.  The data scientist in Austin develops algorithms to detect potential fraud, but does not write code that is included in Apple Wallet, does not design or develop the Accused Technology, and relies on the Cupertino-based Apple Wallet engineers to ensure that Apple Wallet can provide the data necessary for the fraud prevention algorithms.  Jaynes Decl. ¶ 16.  The algorithms also run on separate servers that are not part of Apple Wallet.  *Id.*

locations).[2]  A search of publicly available information identified ten individuals related to Fintiv, but only three appear to be located in Austin and none are in this Division.  *Id.* ¶ 20.  For example, the signatory of the '125 Patent assignment to Fintiv—Fintiv's President, Charles Wiggs—appears to be based in Missouri.  *Id.*  Those ten identified individuals were not involved in the development of the '125 Patent; the patent was developed by SK C&C, a Korean company, '125 Pat. and assigned to a Korean Mozido subsidiary.  Frost Decl. (Ex. B-3) (USPTO Public Pair, Patent Search).  Fintiv has also admitted that it does not possess any '125 Patent conception or reduction to practice documents.  *Id.* ¶ 19.

## IV.    Neither Party Has Any Connection to the Waco Division Relevant to This Case

Apple has no retail stores or offices in the Waco Division, Jaynes Decl. ¶ 27.  None of the Apple employees responsible for the design, development, implementation, or product marketing of Apple Wallet, or who are likely to have unique documents or information relevant to this case, are in Waco or WDTX.  *Id.* ¶¶ 12-15, 17, 20-22, 28.

Fintiv does not appear to have any connection to Waco, other than this lawsuit, and does not allege any.  *See* Frost Decl. (Ex. B-4) (YellowPages.com).

## V.    Potential Nonparty Witnesses

Apple's prior art search is ongoing, but at least eight inventors on three strong prior art references are identified as being located in NDCA.  In particular, the sole inventor on U.S. Patent Application Publication 2010/0041368 is listed as being located in Fremont, California and U.S. Patent Application Publication 2010/0138518 lists San Francisco and Corte Madera, California as the locations for the two named inventors.  *See id.* (Ex. B-5) (U.S. Pat. Appl. Pub. 2010/0041368); *id.* (Ex. B-6) (U.S. Pat. Appl. Pub. 2010/0138518).  All five inventors of U.S. Patent 8,165,635 are identified as being located in NDCA cities.  *See id.* (Ex. B-8) (U.S. Pat. No. 8,165,635).  Likewise, the original assignee of the '635 patent (Vivotech, Inc.) is in NDCA.  *Id.*  According to the '125 Patent, the named inventors are Korean and the prosecuting attorney is in Virginia.  '125 Pat.;

---

[2] WeWork leases office space, including "shared workspaces; conference rooms for interviews, small group sessions, and board meetings . . . ."  Frost Decl. (Ex. B-2) (S&P Capital IQ, WeWork).

Frost Decl. (Ex. B-7) (Hauptman Ham website, "Contact").

## LEGAL STANDARD

To succeed on a motion to transfer, the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").  Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district by considering both the private and public interest factors. *Id.* at 315.

## ANALYSIS

### I.     This Suit Could Have Been Brought in NDCA

Because Apple is a California corporation headquartered in NDCA, this suit could have been brought in that district.  *See Volkswagen II*, 545 F.3d at 312-13.

### II.    NDCA Is the Clearly More Convenient Forum

#### A.    The Private Interest Factors Favor Transfer

Factor 1—Relative Ease of Access to Sources of Proof Favors Transfer: "The Federal Circuit has observed that in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, and therefore the location of the defendant's documents tends to be the more convenient venue." *DataQuill, Ltd. v. Apple Inc.,* No. A-13-CA-706, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (quotations and alterations omitted).  "[D]espite technological advances that make the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the analysis." *See Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), *report and recommendation adopted*, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (quotations omitted)). Additionally, in determining this factor, "the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC,* No. W-16-CA-447, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

Apple's sources of proof in this case are heavily located in NDCA.  Because Apple Wallet was designed and developed in the Cupertino area, all of the documents relating to the design and

development of the Accused Technology were generated—and are currently stored—in NDCA. Jaynes Decl. ¶¶ 10-15, 18.   Likewise, the personnel responsible for marketing the Accused Technology are in NDCA, and their marketing and financial documents are located there.  *Id.* ¶ 17-18, 21.  Licensing personnel and documents are also located in NDCA.  *Id.* ¶ 20.  As such, the overwhelming majority of the sources of proof regarding the Accused Technology are in NDCA. Conversely, Apple has no unique, relevant sources of proof in WDTX.  *Id.* ¶¶ 12-15, 17, 22.

Fintiv does not appear to carry on any significant business activities and therefore is not likely to have many relevant documents.  Since its founder's indictment for securities fraud, Fintiv appears to have repositioned itself as a patent enforcement entity.  Frost Decl. (Ex. B-11) (*Forbes* article).  Fintiv's headquarters is a WeWork space, and it appears to have only a handful of employees, most of whom appear to reside outside this District.  *Id.* (Ex. B-1) (WeWork webpage—locations); *id.* ¶ 20.  Accordingly, it is unclear whether Fintiv has any significant business operations unrelated to litigation and any likely witnesses in this District.

In addition, the '125 Patent was developed by SK C&C, a Korean company, not Fintiv. Frost Decl. (Ex. B-3) (USPTO Public Pair, Patent Search).  Fintiv has admitted that it does not possess any documents relating to conception or reduction to practice for the '125 Patent.  Frost Decl. ¶ 19.  To the extent Fintiv does have any documents, it is unclear how they are relevant to issues in this case and they are presumably located in Austin.  *See ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 775 (E.D. Tex. 2014) ("Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters." (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010))).

Because Apple's sources of proof are all located in NDCA, and Fintiv does not appear to have many relevant documents, the relative ease of access to sources of proof favors transfer.

Factor 2—Availability of Compulsory Process Favors Transfer: As set forth above in Part V of the Background, at least eight inventors on three strong prior art references are identified as being located in NDCA.  No prior art references identified to date name WDTX inventors, and Apple is not aware of any other potential third-party witnesses in WDTX.

Factor 3—Attendance of Willing Witnesses Favors Transfer: The convenience of witnesses is the single most important factor in the transfer analysis.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).  The engineers who developed the Accused Technology, update and maintain the device- and server-side source code for Apple Wallet, and help to ensure that it meets business and regulatory requirements are all in Cupertino (*e.g.*, Messrs. Steele, Novick, Brudnicki and Sharp).  Jaynes Decl. ¶¶ 12-15.  In addition, the likely Apple witnesses on licensing, finance, and sales are also located in NDCA (*e.g.*, Messrs. Cetinok and Jaynes).  *Id.* ¶¶ 17, 20-21.  Therefore, all of the likely Apple witnesses with knowledge of the development, design, implementation, and product marketing of the Accused Technology are located in NDCA.  *Id.* ¶¶ 12-15, 17, 20-21.

Apple does not have any likely witnesses in WDTX, *id.* ¶¶ 12-15, 17, 22, 26, and all of the above-identified witnesses are a short car ride from the courthouses in NDCA (whether San Francisco, Oakland, or San Jose), but more than 1,700 miles and a lengthy plane ride from Waco. *See* Frost Decl. (Ex. B-9) (Google Flights Search Results).  In addition to travel time, the length of this trip also involves additional expenses such as meal and lodging expenses.

Fintiv is unlikely to have many witnesses in WDTX, and there is no indication that Fintiv has offices or other facilities in this Division.  *See* Frost Decl. (Ex. B-4) (YellowPages.com). Fintiv appears to be a patent enforcement entity, and its potentially relevant witnesses appear to reside all around the United States.  *Id.* (Ex. B-11) (*Forbes* article); *id.* ¶ 20.

In situations like this, where the vast majority of likely witnesses are in the transferee district, transfer is strongly favored.  *Genentech*, 566 F.3d at 1343; *Wet Sounds*, 2017 WL 4547916, at *3; *Collaborative Agreements, LLC v. Adobe Sys., Inc.*, No. 1-14-CV-356, 2015 WL 10818739, at *4 (W.D. Tex. Aug. 21, 2015); *Via Vadis, LLC v. Netgear, Inc*., No. A-14-cv-809, 2015 WL 10818675, at *2 (W.D. Tex. July 30, 2015).  For example, in *Polaris Innovations Ltd. v. Dell, Inc.*, No. SA-16-CV-451, 2016 WL 7077069, at *3 (W.D. Tex. Dec. 5, 2016), the defendants successfully moved to transfer a patent infringement case from WDTX to NDCA, even though the

8

defendant had an Austin office with 300 employees and identified at least one Austin-based engineer heavily involved in the design and development of at least one of the accused products. Nevertheless, the Court still found that the bulk of the evidence and witnesses were in California and that this weighed in favor of transfer. *Id.* at *5.

In addition, this Court transferred two patent infringement cases against Apple to NDCA because, like this case, numerous witnesses were located in the NDCA and there was little or no connection to WDTX. Order Transferring Venue to NDCA and Dismissing Mot. to Dismiss w/o Prejudice, *Uniloc USA, Inc. et al. v. Apple Inc.*, No. A-18-CV-164-LY (W.D. Tex. Mar 28, 2019), ECF No. 52 ("Uniloc Transfer Order"); *DataQuill*, 2014 WL 2722201, at *3-4. In *Uniloc*, the Court recently transferred the case to NDCA because, like in this case, a "significant number of party and non-party witnesses are in California" and most of the relevant witnesses were within the subpoena power of NDCA, but not WDTX. Uniloc Transfer Order at 8. In *DataQuill,* the Court also transferred an infringement suit against Apple to NDCA because, as in this case, Apple "designed each of the accused products at its headquarters in Cupertino" and "identified a number of Cupertino-based witnesses who are likely to possess specific knowledge relevant to the accused products." 2014 WL 2722201, at *3-4. Because Apple has identified numerous relevant witnesses in NDCA and Fintiv is unlikely to have many witnesses in WDTX, this factor favors transfer.

Factor 4—Other Practical Problems: Apple is unaware of any similar or related cases pending in either NDCA or WDTX. Accordingly, this factor is neutral in the convenience analysis.

**B.     The Public Interest Factors Favor Transfer**

Factor 1—Court Congestion Slightly Favors Transfer: Although a less congested Waco Division docket will likely change the statistics, based on data as of December 2018, NDCA has a shorter median time to trial for patent cases than this District (approximately 28 months and 32 months, respectively). *See* Frost Decl. (Ex. B-10) (Lex Machina Statistics).

Factor 2—Local Interests Strongly Favor Transfer: NDCA has a stronger local interest in this litigation than WDTX. This factor weighs heavily in favor of transfer because of the solid factual connection that this action has to the transferee venue and the lack of connection to this

District.  *See Volkswagen I*, 371 F.3d at 206.  The personnel identified in Part II of the Background that are responsible for research, design, development, implementation, and product marketing of Apple Wallet are located in NDCA—and none are in WDTX.  Jaynes Decl. ¶¶ 12-15, 17, 22.  This gives NDCA a significant localized interest in the action.  *See DataQuill*, 2014 WL 2722201, at *4 ("[T]his case is about Apple's actions in designing and developing the iPhone and some of its software products, all of which happened in Cupertino.").  Fintiv is allegedly headquartered in the Austin Division, but its connection to WDTX is tenuous.  *See supra* Part I.A.1.

Factors 3 and 4—Familiarity with the Governing Law and Conflicts of Law Are Neutral: Because this case is governed by federal patent law, the last two public interest factors are neutral. *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## III.    In WDTX, the Austin Division is More Convenient

If the Court determines that transfer to NDCA is not warranted, this case should be transferred to the Austin Division of this District because there are no sources of proof in this Division of WDTX.  "The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another."  *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam).  As noted above, Fintiv is based in Austin in a WeWork space, and through publicly available information, Apple has not identified any Fintiv employees located in the Waco Division.  Because Fintiv alleges that its principal place of business is in Austin, to the extent Fintiv has any relevant documents or witnesses they are presumably located there.  *See ACQIS*, 76 F. Supp. 3d at 775.  Accordingly, if the Court determines that NDCA is not clearly more convenient than this District, Apple respectfully requests that the Court transfer this case to the Austin Division, which is clearly more convenient for both parties than this Division.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court transfer this case to NDCA.  If the Court believes that a transfer to NDCA is not warranted, this case should instead be transferred to the Austin Division of WDTX.

Dated:  June 13, 2019

Respectfully submitted,

/s/Claudia Wilson Frost
Claudia Wilson Frost – Lead Counsel
Texas Bar No. 21671300
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
609 Main, 40th Floor
Houston, TX 77002
Telephone:  713.658.6400
Facsimile:  713.658.6401
cfrost@orrick.com

Travis Jensen
California Bar No. 259925
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Rd.
Menlo Park, CA 94025
Telephone:  650.614.7400
Facsimile:  650.614.7401
tjensen@orrick.com

ATTORNEYS FOR APPLE INC.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Apple has conferred with counsel for Fintiv in a good-faith effort to resolve the matter presented herein.  Counsel for Fintiv opposes this instant Motion.

/s/Claudia Wilson Frost
Claudia Wilson Frost

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 13, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5.  Any other counsel of record will be served by a facsimile transmission or first-class mail.

/s/Claudia Wilson Frost
Claudia Wilson Frost